UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | 3:20-CR-00058(KAD) |
| | ) | |
| v. | ) | |
| | ) | |
| Antoine SISTRUNK, Amire NEWSOME, a/k/a "Mire," Zaire DEDRICK, a/k/a "Zi" a/k/a "Zi Hb," Joshua GILBERT, a/k/a "Lor Heavy," Jauwan EDWARD, a/k/a "Yaya," Jahaz LANGSTON, a/k/a "Haz," Lorenzo CARTER, a/k/a "Zo," Luis GARCIA, a/k/a "Ebk Lou," & Michael LOCKHART, a/k/a "Mikey Rtn" | ) ) ) ) ) ) ) ) ) | JULY 7, 2022 |

## MEMORANDUM OF DECISION
## RE: MOTIONS FOR BILL OF PARTICULARS

Kari A. Dooley, United States District Judge:

The Defendants are named in a multi-count indictment arising out of the allegedly illegal activities of a street gang known as Original North End or Only North End ("O.N.E."). The Third Superseding Indictment ("TSI") identifies Defendants Newsome, Dedrick, Gilbert, Edward, Langston, Carter, and Garcia[1] as members of O.N.E., the enterprise which forms the basis of a Racketeer Influenced and Corrupt Organizations ("RICO") conspiracy. O.N.E. members allegedly sold narcotics in and around Bridgeport, Connecticut, committed numerous acts of violence against rival gang members and others, and committed numerous crimes against property, *e.g.*, vehicle theft.

---

[1] Defendants Sistrunk and Lockhart are not alleged to be members of O.N.E. in the Third Superseding Indictment. Other alleged members of O.N.E. have been charged separately, and some of those appearing in the Third Superseding Indictment have resolved their cases, to include Tyiese Warren and Jamar Traylor. Defendant Traylor joined Defendant Gilbert's motion for a bill of particulars before pleading guilty, and any residual interest that Defendant Traylor may have in the outcome of this decision is therefore moot.

Pending before the Court are motions by Defendants Gilbert, Newsome,[2] Dedrick, Garcia, Carter, Langston, and Edward for a bill of particulars each of which primarily seeks detail regarding the RICO conspiracy allegations, which are contained in Count One of the TSI. In Count One, the O.N.E. Enterprise and its purposes are described in the first six pages of the TSI, which are followed by multiple paragraphs describing the "Means and Methods of the Enterprise." The TSI then describes a multi-faceted conspiracy to engage in a pattern of racketeering activity by committing, *inter alia*, acts of murder, robbery, arson, Hobbs Act robbery, interstate transportation of stolen vehicles, controlled substances distribution, and witness tampering. Finally, Count One identifies twenty-three specific overt acts in furtherance of the RICO conspiracy, "among others." Not all of the Defendants are named in all of the Overt Acts.[3] Additional detail about the TSI will be set out as needed.

In the various motions, the Defendants seek to narrow the universe of acts that the Government could offer at trial, which would make the conduct of this case (both in terms of the evidence provided during discovery and in terms of the ultimate trial) less unwieldy and would allow the Defendants a full and fair opportunity to present a defense. Defendant Gilbert, for example, asks that the Government identify and be limited to offering evidence of no more than 100 actions, incidents or days of communication. Defendants Dedrick, Edward, and Garcia echo

---

[2] Defendant Newsome, along with the other moving Defendants, joined Defendant Gilbert's motion when it was filed. At oral argument, counsel for Defendant Langston stated that he was not sure if such joinder was appropriate under D. Conn. L. Crim. R. 47 and reserved his right to file separately. The Court later ordered that any Defendant who wanted to file a motion for a bill of particulars could do so by April 28, 2022. Defendant Newsome did not so file but did argue for a bill of particulars at oral argument, and his arguments are considered herein.

[3] The Government represented that if the Government had information that a named defendant was involved in an identified overt act at the time that the TSI was sought, that defendant was named in the TSI. The Government's investigation is ongoing, however. In light of the ongoing nature of the investigation, the Government also represented that if it uncovers additional information that implicates one or more of the named defendants in an act of violence with respect to which they are not presently identified, it will seek a Fourth Superseding Indictment to reflect as much.

Defendant Gilbert's request by asking the Court to order the Government to restrict the number of acts, communications, and transactions that could be presented at trial.

Both within the context of discussing the vast amount of discovery in this case and as an independent concern, a number of the Defendants also seek specifics as to the overt acts about which the Government will offer evidence at trial and ask, in effect, that the Government be limited to proving the overt acts listed in the TSI. This concern is directed toward the language in ¶ 14 of the TSI which states that "the following overt acts, **among others**," were committed in furtherance of the RICO conspiracy. (Emphasis added.) Similarly, some Defendants further seek the identity of "known" but unnamed co-conspirators as well as details as to when a defendant is alleged to have joined this years-long conspiracy. Defendant Carter, for example, asks the Court to order the Government to reveal who the "others" are in ¶¶ 14(f) & 18 of the TSI, which alleges that Defendants Garcia, Carter, and "others" burned a white Jeep Grand Cherokee to conceal a murder. Defendant Langston likewise requests information about the "others known and unknown to the Grand Jury" in ¶ 14(w) of the TSI with whom Defendant Langston allegedly agreed and attempted to kill a member of the P.T. Barnum/East End gang alliance.

Finally, Defendants Garcia and Langston, among others, seek clarification as to ¶ 14(a) of the TSI, which makes allegations concerning a conspiracy to violate the controlled substances laws of the United States. This drug conspiracy is alleged to have started in 2012; involved heroin, fentanyl, Percocet pills, marijuana, and cocaine base/crack cocaine, among other controlled substances; and allegedly involved, in addition to several of the Defendants, "others known and unknown to the grand jury." Although Defendant Langston is not charged with this Overt Act, the Government represented at oral argument that, after the TSI was returned, evidence implicating Defendant Langston in that charge had emerged. Defendant Garcia, meanwhile, asserts that his

3

involvement has not been clarified by the "mountain" of discovery provided by the Government and seeks additional details about specific transactions that may have been conducted as part of the conspiracy.

**Discussion**

Pursuant to Rule 7(f) of the Federal Rules of Criminal Procedure, the Court may direct the Government to file a bill of particulars, or a defendant may move for a bill of particulars within 14 days after arraignment or at a later time if the Court permits. A bill of particulars allows a defendant "to identify with sufficient particularity the nature of the charge pending against him, thereby enabling the defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense." *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987) (citing, among others, *Wong Tai v. United States*, 273 U.S. 77, 82 (1927)). While district courts have wide discretion in deciding whether to order the Government to write a bill of particulars, "[c]ourts are only required to grant a bill of particulars 'where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused.'" *United States v. Raniere*, 384 F. Supp. 3d 282, 322 (S.D.N.Y. 2019) (quoting *United States v. Chen*, 378 F.3d 151, 163 (2d Cir. 2004)). "The standard turns on 'whether the information sought is necessary, not whether it is helpful,'" and showing necessity requires the defendant to show that he would be prejudiced by being denied a bill of particulars. *See id.* (quoting *United States v. Facciolo*, 753 F. Supp. 449, 451 (S.D.N.Y. 1990)) (further citations omitted); *see also United States v. Torres*, 901 F.2d 205, 234 (2d Cir. 1990) ("The function of a bill of particulars is to provide defendant with information about the details of the charge against him if this is necessary to the preparation of his defense, and to avoid prejudicial surprise at the trial."), *abrogated on other grounds by United States v. Marcus*, 628 F.3d 36, 41 (2d Cir. 2010).

Indeed, "[t]he prosecution need not particularize all of its evidence." *United States v. Davidoff*, 845 F.2d 1151, 1154 (2d Cir. 1988) (citing *United States v. Gottlieb*, 493 F.2d 987, 994 (2d Cir. 1974)). "A bill of particulars is not an investigative tool which a defendant can use to force the government to preview its evidence or expose its legal theory." *United States v. Massino*, 605 F. Supp. 1565, 1582 (S.D.N.Y. 1985), *rev'd on other grounds*, 784 F.2d 153 (2d Cir. 1986); *see also Gottlieb*, 493 F.2d at 994 ("The government [is] not required to disclose its evidence in advance of trial."). "The court must be cognizant of the fact that a bill of particulars confines the government's evidence at trial to the particulars furnished." *United States v. DeFabritus*, 605 F. Supp. 1538, 1548 (S.D.N.Y. 1985).

"In exercising [its] discretion, the court must examine the totality of the information available to the defendant—through the indictment, affirmations, and general pre-trial discovery—and determine whether, in light of the charges that the defendant is required to answer, the filing of a bill of particulars is warranted." *United States v. Bin Laden*, 92 F. Supp. 2d 225, 233 (S.D.N.Y. 2000). "So long as . . . an indictment and discovery sufficiently enable defendants to avoid surprise and prepare for trial, a bill of particulars is not warranted." *United States v. Coffey*, 361 F. Supp. 2d 102, 122 (E.D.N.Y. 2005).

Although the Defendants have not directly asked that the Government identify all of the over acts that it intends to prove at trial, the Court first considers whether the Government must clarify which acts, "among others," are alleged. "The indictment is not required to . . . specify the nature, time, and place of every overt act the defendant or others committed in furtherance of the alleged conspiracy, or to set forth all the evidence the Government intends to introduce." *United States v. Butler*, 351 F. Supp. 2d 121, 134 (S.D.N.Y. 2004); *see also United States v. Muhammad*, 903 F. Supp. 2d 132, 136–37 (E.D.N.Y. 2012) (denying motion for a bill of particulars, where,

among other requests, defendant sought "the details of each overt act alleged" in a narcotics conspiracy). Indeed, with respect to a RICO conspiracy under 18 U.S.C. § 1962(d), the Government is not required to allege or prove that any particular defendant committed or agreed to commit any specific overt act. *See Salinas v. United States*, 522 U.S. 52, 63–64 (1997); *see also United States v. Zemlyansky*, 908 F.3d 1, 9–13 (2d Cir. 2018) (discussing the use of certain predicate acts, of which the defendant had been acquitted in a previous trial, in a subsequent RICO conspiracy prosecution). Notwithstanding, the TSI identifies twenty-three such acts which appear to be representative of the identified objectives of this RICO conspiracy. To the extent the Defendants seek an order compelling the Government to disclose by bill of particulars any overt acts, "among others," beyond those in the TSI that might be proved at trial, the request is DENIED. *See Davidoff,* 845 F.2d at 1154 ("We do not mean to imply that even in a RICO case the prosecution must always disclose in advance of trial every act it will prove that may violate some criminal statute.").[4]

As to the remaining issues, the Court starts by recognizing that the discovery provided to date is exceptionally voluminous. The Court has reviewed the index to the discovery items provided to counsel on a hard drive as well as the index to the discovery uploaded to the USA file exchange portal. The indices alone are 26 pages in length. Therein, the Government identifies the discovery by subject matter and includes a brief description of the discovery. For example, the January 27, 2020 shooting at the state courthouse on Golden Hill Street is a subject matter descriptor, and within this category are line items, *e.g.*, "[Bates No.] State SW ([name] TEL 475-

---

[4] In *Davidoff,* the Second Circuit held that the defendant was, in fact, surprised at trial when the Government offered evidence that the defendant had engaged in an extortionate scheme with respect to three victims that were not identified in the indictment. 845 F.2d at 1154. Notably, the discovery in that case did not cure these deficiencies, as the relevant Jencks Act material was provided too late to alleviate any surprise and disclosures of some 6,000 pages of wiretap material were misleading as to one of the three victims and did not implicate the other two at all. *See id.* at 1155.

319-[XXXX]." Within each subject matter, the Government has also identified the source of the discovery, *e.g.*, the Bridgeport PD, the CSP, and the Naugatuck PD. Similar indexing is provided for the homicides of Len Smith, Ty'Quess Moore, multiple robberies, carjackings, and shootings. The indices do NOT include a subject matter category related to the conspiracy to distribute controlled substances which the Court discusses *infra*.[5] The discovery includes thousands of pages of police reports generated in response to the multiple crimes attributed to the O.N.E. Enterprise; multiple search warrants and warrant returns; surveillance videos; telephone extractions; lab reports, social media postings; and law enforcement records. Although voluminous, it is organized in such a way as to make review efficient based upon subject matter and description.[6] For example, counsel seeking lab reports related to the Len Smith homicide can easily and readily find and review those reports. And although review of a single, let alone many, telephone extraction(s) might be a labor-intensive undertaking, a bill of particulars is not going to make it less so as a bill of particulars would not require the Government to identify which portions of the extraction have particular evidentiary or probative value. "It is not the function of a bill of particulars to allow defendants to preview the evidence or theory of the government's case." *United States v. Gibson*, 175 F. Supp. 2d 532, 537 (S.D.N.Y. 2001).

      In any event, the Government has also been forthcoming with some specific details about its case through its practice of conducting "reverse proffers" with any Defendant who wants one. Several Defendants have in fact already requested and participated in a reverse proffer. While a reverse proffer does not limit the Government's evidence at trial, it allows a defendant to hear and

---

[5] At oral argument, the Government proffered that the Defendants' social media posts are replete with evidence regarding the narcotics trafficking, to include photographs of product, prices, and the like. It is unclear on the present record the extent to which the discovery includes dates, times, and places for specific narcotics transactions.

[6] This is not a random document dump or a case where the Government's case remains shrouded in mystery, as was the case in *Bortnovsky*. *See* 820 F.2d at 575.

understand the theory of the Government's case against him and the evidence, at least in part, on which the Government relies in advancing that theory. The use of reverse proffers therefore increases the totality of information available to a defendant and reduces the need for a bill of particulars. *See United States v. Carpenter*, No. 3:13-CR-226(RNC), 2015 WL 9480449, at *2 (D. Conn. Dec. 29, 2015).

While voluminous discovery may under some circumstances be a reason to require a bill of particulars, under the circumstances presented here, the Court is not persuaded that such a bill, which would unavoidably limit the Government's case to a finite series of actions or events, is necessary to avoid prejudicial surprise to the Defendants at trial. *See DeFabritus*, 605 F. Supp. at 1547–48 ("The court must be cognizant of the fact that a bill of particulars confines the government's evidence at trial to the particulars furnished."). The request that the Government identify by way of bill of particulars "no more than 100" specific acts or instances to be proven at trial—or to otherwise "narrow the universe" of the Governments case—is DENIED.

Next, Defendants Carter and Langston seek the identity of referenced "known" unindicted co-conspirators. "There is no clear rule in the Second Circuit as to when a bill of particulars for unindicted co-conspirators should be granted." *United States v. Middendorf*, No. 18-CR-36 (JPO), 2018 WL 3956494, at *2 (S.D.N.Y. Aug. 17, 2018) (quoting *United States v. Kahale*, 789 F. Supp. 2d 359, 372 (E.D.N.Y. 2009)). Generally speaking, the larger and more amorphous the conspiracy, the more necessary a bill of particulars may be. *See id. See also United States v. Nachamie*, 91 F. Supp. 2d 565, 572 (S.D.N.Y. 2000) ("In deciding whether a defendant's demand for the names of known unindicted co-conspirators would achieve [the purpose of a bill of particulars], courts should consider the following factors: (1) the number of co-conspirators; (2) the duration and breadth of the alleged conspiracy; (3) whether the Government otherwise has provided adequate

notice of the particulars; (4) the volume of pretrial disclosure; (5) the potential danger to co-conspirators and the nature of the alleged criminal conduct; and (6) the potential harm to the Government's investigation."). However, "[c]ourts have been highly reluctant to require a bill of particulars when defendants have asked for specific identities of co-conspirators or others allegedly involved" where the temptations of perjury, subornation, and intimidation are present. *See Coffey*, 361 F. Supp. 2d at 122. The same is true where a defendant clearly seeks access the Government's evidence, as presented through potential witnesses, rather than clarification as to the facts alleged in the indictment. *See United States v. Gotti*, 784 F. Supp. 1017, 1019 (E.D.N.Y. 1992).

Here, the allegations include those indicating that O.N.E. members seek to avoid prosecution through witness intimidation and violence. Indeed, the accusations include one specific effort to tamper with a robbery victim and witness by having him killed. The accusations also include at least two incidents of arson with respect to vehicles used during two separate drive-by shootings, shootings which resulted in the death of Len Smith and the wounding of four people outside the state courthouse in Bridgeport. These accusations raise grave concerns should as yet unnamed co-conspirators be identified. Additionally, the Government has represented that the investigation is ongoing, which also counsels against the disclosure of unindicted co-conspirators. Further, the allegations regarding this RICO conspiracy are neither vague nor amorphous: Except for the overt act concerning the narcotics conspiracy, each of the alleged overt acts include dates and specific details about the alleged racketeering activities.[7] And to the extent any unnamed co-conspirators will be witnesses at the trial, their identities and applicable Jencks Act material will

---

[7] The Court also notes that at least one of the overt acts, specifically the January 27, 2020 courthouse shooting, was the subject of another prosecution of persons not named in the TSI. Those defendants and the allegations against them are a matter of public record and available to the Defendants.

9

be provided in due course and sufficiently in advance of trial so as to avoid any prejudicial surprise and to facilitate a meaningful defense. The request for the identity of "known" but unnamed co-conspirators is therefore DENIED.

Finally, the Overt Act in ¶ 14(a) of the TSI alleges a conspiracy to distribute controlled substances by, among others, Defendants Newsome, Gilbert, Dedrick, Garcia and Edward. Defendants Garcia and Langston,[8] in particular though not exclusively,[9] request additional detail regarding the drug conspiracy. Although not separately categorized in the indices, the discovery does include whether and when the Defendants were arrested and found in possession of narcotics, social media posts advertising the sale of drugs, and text messages regarding same. The Government proffers that the drug trafficking was a pervasive mainstay of the O.N.E. Enterprise and the discovery is replete with evidence of same. Finally, the Government asserts that since the Defendants are alleged to have participated in a drug conspiracy, the Government need not prove the time and place of any particular transaction. While the Government is correct, the Court notes that evidence of specific transactions is often the norm, even in conspiracy cases.

Notwithstanding, the Court does not, at this juncture, find it necessary or appropriate to require the Government to identify specific dates and times on which a particular defendant may have either distributed controlled substances or possessed with the intent to distribute controlled substances. The request for a bill of particulars to include this information is therefore DENIED.

---

[8] As discussed *supra*, the Government has confirmed that Defendant Langston is implicated in the alleged narcotics conspiracy even though he is not named in ¶ 14(a) of the TSI. Similar to Defendant Langston's request, Defendant Carter asks for additional detail as to this allegation should he be alleged to have participated in the narcotics conspiracy.

[9] In making their arguments for limiting the Government's case to a finite series of events, many of the other Defendants take issue with the breadth of ¶ 14(a) although they do not specifically seek additional details regarding the drug conspiracy. Defendant Gilbert, for example, has pointed out that he was ten or twelve years old when this conspiracy was alleged to begin, and, by seeking to limit the Government's case to 100 days, transactions, or communications, he would ostensibly count any individual transactions covered by this overt act against the proposed total.

However, the denial is without prejudice to renewal if, as the case is closer to trial and after review of the voluminous discovery, the Defendants identified in ¶14(a) as having participated in the drug conspiracy remain unclear as to the factual basis for the allegations against them. The Government is encouraged, either through marshalling the discovery as was done for the other alleged overt acts, or through the reverse proffer process, to provide additional detail in terms of the nature and scope of the alleged drug conspiracy.

For the foregoing reasons the various motions for a bill of particulars at ECF Nos. 364, 420, 430, 435, 437, and 438 are DENIED or DENIED without prejudice as set forth above.

**SO ORDERED** at Bridgeport, Connecticut, this 7th day of July 2022.

                                          */s/ Kari A. Dooley*
                                          KARI A. DOOLEY
                                          UNITED STATES DISTRICT JUDGE